```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

JOAN MILLER,                          :
     Plaintiff,                       :
                                      :
v.                                    :    Civil No. 3:05cv275 (JBA)
                                      :
SUSAN MOYNIHAN, THOMAS MAIN,          :
and STONINGTON POLICE DEPARTMENT,     :
     Defendants.                      :
```

## Ruling on Municipal Defendants' Motion for Summary Judgment [Doc. # 37]

Plaintiff Joan Miller, a resident of 49 Courtland Street in Stonington, filed a complaint in Connecticut Superior Court against Susan Moynihan (also known as Susan Moynihan-Freeman), her former neighbor at 47 Courtland Street, as well as Stonington Police Officer Thomas Main and the Stonington Police Department, alleging nine counts: trespass, theft, malicious prosecution, private nuisance, and negligent infliction of emotional distress against Moynihan; and unlawful arrest, unreasonable force, and false imprisonment, in violation of the United States and Connecticut Constitutions, against Officer Main and the Department.  (See Notice of Removal and Compl. [Doc. # 1].) Defendants removed the complaint to federal court (id.), and Officer Main and the Department moved for summary judgment on the claims against them.  (Mot. for Summ. J. [Doc. # 37]).  For the

1

following reasons, the motion will be GRANTED IN PART and DENIED IN PART.

## I.  Factual Background

This case arises from a long-simmering Hatfield-and-McCoy property boundary dispute between plaintiff and defendant Moynihan.  Plaintiff purchased her home at 49 Courtland Street in 1954, and defendant Moynihan, her husband, and their children moved in next door in 1998.  (Def. L.R. 56(a)1 Stmt. [Doc. # 37-3] ¶¶ 1-2.)  The two parcels share a 150-foot boundary, and Miller and Moynihan disagreed about the location of the property line.  (Id. ¶¶ 3-4.)  The Stonington police were called by Miller or Moynihan approximately 30 times between 1999 and October 2003, when Miller moved away.  (Id. ¶ 5; Miller Aff., Pl. Ex. 3, ¶ 11.)  The calls involved such complaints as Moynihan's cutting the lawn too loudly or spraying Miller with a garden hose, and Miller's placing objects on Moynihan's lawn or removing a surveyor's stake and bird feeder from the property line.  (See Police Incident Reports, Def. Ex. G.)  Prior to the incident giving rise to this case, only one of these complaints resulted in an arrest, when plaintiff was caught on police videotape and observed by one of the Moynihan children placing shards of glass on the Moynihans' lawn in 2000.  (Def. L.R. 56(a)1 Stmt. ¶ 6; Arrest Aff., Def. Ex. G, at 2-4.)

In summer 1999, the parties erected competing fences mere inches apart on the boundary line.  On July 6, 2002, Moynihan called the Stonington Police Department to report that Miller had damaged her wooden fence.  Officer Main was sent to investigate, and the parties agree that the only way for Main to determine whether there was damage to the side of Moynihan's fence facing Miller's house was to view it from Miller's property, because the fences were so close together along the boundary line.  (See Def. L.R. 56(a)1 Stmt. ¶ 12; Pl. L.R. 56(a)1 Stmt. [Doc. # 38-3] ¶ 12.)  Officer Main asked Moynihan to accompany him so she could identify where the damage was located.  Def. L.R. 56(a)1 Stmt. ¶ 13; Pl. L.R. 56(a)1 Stmt. ¶ 13.)  On seeing Moynihan and Officer Main, plaintiff came out of her house and yelled at them to get off her property.  (Miller Dep., Def. Ex. B, at 145-46; Pl. L.R. 56(a)2 Stmt. ¶¶ 14-15.)  Plaintiff admits that she "continued her requests that the Defendants quit trespassing on her property and leave" (Pl. L.R. 56(a)2 Stmt. ¶ 17).

The parties dispute the details of what happened next.  Defendants testified that Officer Main told Miller several times to calm down, and after she remained "very hostile and belligerent," Main directed her to go into her house.  (Moynihan Dep., Def. Ex. A, at 29; Main Dep., Def. Ex. D, at 24-25.)  Plaintiff denies receiving such an instruction.  (Miller Dep. at

3

146; Pl. L.R. 56(a)2 Stmt. ¶ 18.)  She admits, however, that Officer Main then told her, "move or I will have you arrested," at which point she "reached [her] arm up."  (Miller Dep. at 152.) Plaintiff asserts that she was reaching back for assistance from her gardener, who was standing near her on the lawn (id. at 73), but Officer Main and Moynihan testified that plaintiff grabbed Moynihan's arm, which Moynihan stated resulted in a bruise on her bicep.  (Moynihan Dep. at 29; Main Dep. at 25.)  Plaintiff denies that she grabbed or even touched Moynihan.  (Miller Dep. at 67, 73, 154, 208, 214, 215, Pl. Ex. 1; Miller Aff. ¶ 5, Pl. Ex. 2.)

Although they disagree on the timing — whether before or after Miller raised her arm — the parties agree that Moynihan picked up a metal stake (characterized by plaintiff as a surveyor's stake and by defendants as a garden stake) from between the two fences, and that Miller wanted to get the stake. (Miller Dep. at 67, 73; Main Dep. at 25; Moynihan Dep. at 29-30.) The parties disagree, of course, on whose side of the property line the stake was placed.  (Id.)

Miller's and Main's respective versions clearly place in dispute whether Main could have observed Miller "grabbing Ms. [Moynihan-] Freeman's arm" as he claims, after which he told her that she was under arrest.  (Main Dep. at 26.)  Plaintiff disputes Main's contention that Miller "continued yelling and

4

screaming and she became very tense and started to physically resist ... at which time I needed to place her on the ground in order to get my handcuffs out.  I used just enough force to force her to her knees and then onto her stomach laying down on the ground, at which time I handcuffed her." (Id.)  Plaintiff denies that she physically resisted arrest, stating that she is "66 years old and weigh[s] 132 pounds and cannot physically resist a large man like Officer Main."  (Miller Aff. ¶ 7.)  Miller testified that Officer Main "grabbed" her hand, "threw [her] on the ground," "kicked [her] in back of the leg" [sic] and "yanked" her by her arms after she was handcuffed.  (Miller Aff. ¶¶ 9-10; Miller Dep. at 66, 152.)  Miller has proffered photographs showing bruising on her arm, left leg and wrists that she attributes to Officer Main's actions.  (Miller Aff. Pictures 1-4.)

Moynihan testified that Miller "charged at" her, at which point Officer Main "yanked" Miller off of her and Miller "was fighting him."  (Moynihan Dep. at 31.)  Moynihan stated that Miller continued "[s]truggling away from him, pushing, screaming at me, still trying to get at me."  (Id. at 32.)  Because, according to Moynihan, Miller grabbed her arm, Moynihan demanded that Miller be arrested.  (Id.)  Plaintiff denies all of these allegations.  (See Miller Dep. at 159, 208, 214.)

5

Miller was charged with breach of the peace under Connecticut General Statutes § 53a-181(a), see infra at 11 n.1. On May 7, 2003, the State entered a nolle prosequi. (Tr. of Proceedings, Def. Ex. E at 2.)  The Honorable Kevin P. McMahon of Connecticut Superior Court at New London accepted the nolle and stated:

> As the case was presented to me and the police reports and the evidence and everything else, it was clear to me that the State would have had a great problem proving this particular case.
>
> It also was made clear to me that there's an ongoing dispute involving the two parties and [] in no way, shape or form am I faulting the police department.  I think the facts themselves presented them as they are.
>
> They are presented with an impossible situation here where one is saying he said, she said, there's factors and everything, but, if there comes a chance, I fully expect the police to present a case and if there's a good case, whether it's one side or the other, after all the resources the town has used on this, the court has used on this, lawyers and everything else, somebody is going to pay if it can be proven....

(Id. at 2-4.)  Judge McMahon at that time vacated a previously-issued protective order requiring Miller to stay away from Moynihan.  (Id. at 3.)

## II.  Standard

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party establishes that there is no genuine issue of material fact to be resolved at trial and

6

that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  Materiality is determined by the substantive law that governs the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In this inquiry, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

 In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if he or she can point to an absence of evidence to support an essential element of the non-moving party's claim.  Celotex, 477 U.S. at 322-23.  "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial.  It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'"  Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex, 477 U.S. at

324; see also Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994)) ("[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case.").  The non-moving party, in order to defeat summary judgment, must then come forward with evidence that would be sufficient to support a jury verdict in his or her favor.  Anderson, 477 U.S. at 249 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party").  In making this determination, the Court draws all reasonable inferences in the light most favorable to the party opposing the motion.  Matsushita, 475 U.S. at 587.  However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading," Fed. R. Civ. P. 56(e), and "some metaphysical doubt as to the material facts" is insufficient.  Id. at 586 (citations omitted).

On the other hand, "[i]f reasonable minds could differ as to the import of the evidence ... and if there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain [] summary judgment."  R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal citations, alterations and quotations omitted).

**III. Discussion**

    **A.   Town of Stonington Police Department**

The Police Department moves for summary judgment on the grounds that plaintiff has not pled or proved a <u>Monell v. Department of Social Services</u>, 436 U.S. 58 (1978), "pattern or practice" claim against it, and therefore plaintiff cannot establish the Department's liability under section 1983 (<u>see</u> Def. Mem. of Law [Doc. #37-2] at 24-27).  Plaintiff does not oppose granting the motion as to this defendant (<u>see</u> Pl. Mem. of Law at 1 n.1), and therefore summary judgment will be entered in the Town's favor.

    **B.   Unreasonable Force Claims**

Plaintiff claims that Officer Main used excessive and unreasonable force in arresting her, in violation of her Fourth Amendment rights.  "Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. ...[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment...."  <u>Maxwell v. City of N. Y.</u>, 380 F.3d 106, 108 (2d Cir. 2004) (citing <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989)) (internal quotation marks omitted).  The analysis

involves an inquiry into the totality of the circumstances, "including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he [or she] is actively resisting arrest." Sullivan v. Gagnier, 225 F.3d 161, 165 (2d Cir. 2000) (citations omitted).

Here, Officer Main has failed to demonstrate the absence of dispute of material fact with respect to the reasonableness of the force he used on Miller. Officer Main argues that the force he employed was reasonable in light of plaintiff's "physical resistance" to his verbal instructions and his attempts to place handcuffs on her (Def. Mem. of Law at 23), and his objective of getting the situation under control quickly by arresting Miller because he feared that the bystander, Miller's gardener, might intervene to help her and thus escalate the physical confrontation. (See Main Dep. at 53-54.) However, plaintiff claims that Main never ordered her into her house, that she did not physically resist his efforts to handcuff her, and that she never touched Moynihan. She attributes bruises on her upper arm, wrists and left leg to Main's force, which she contends was excessive under the circumstances because she offered no resistance. These disputes of fact — whether plaintiff physically resisted arrest and whether the force used was reasonable under the circumstances — must be resolved by a jury.

10

Therefore Officer Main is not entitled to summary judgment on Counts Seven and Eight.

**C.    Unlawful Arrest and False Imprisonment Claims[1]**

Unless plaintiff can prove that defendant Main lacked probable cause to arrest plaintiff Miller, her unlawful arrest and false imprisonment claims fail.

> To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show that 'the defendant intentionally confined him without his consent and without justification.'  Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff.  Probable cause to arrest exists when the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'

Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)).  Officer Main argues that he had probable cause to arrest Miller, or, alternatively, that he is entitled to qualified immunity because he had arguable probable cause to arrest her.  For the following

---

[1] These 42 U.S.C. § 1983 claims are alternately called "false arrest" and "unlawful imprisonment," but the Court uses the terms "unlawful arrest" and "false imprisonment" as they were included in the Complaint.  Since the two claims are substantially identical under Connecticut law, the Court addresses them together.  See, e.g., Batts v. Jagoda, 1998 U.S. Dist. LEXIS 2362 (D. Conn. 1998); Binette v. Sabo, 710 A.2d 688, 707 (Conn. 1998).

reasons the Court concludes that the factual predicate for probable cause or arguable probable cause is disputed and requires jury determination, making summary judgment improper.

The breach of the peace statute under which plaintiff was arrested enumerates six grounds.[2] Only two of these six — subsection (2) "assaults or strikes another" and subsection (3) "threatens to commit any crime against another person or such other person's property" — could apply to the instant situation, which took place on private property; the remaining subsections refer to conduct on public property. The terms "assaults," "strikes," and "threatens," are not statutorily defined.

---

[2] Connecticut's breach of peace statute provides:

> A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (2) assaults or strikes another; or (3) threatens to commit any crime against another person or such other person's property; or (4) publicly exhibits, distributes, posts up or advertises any offensive, indecent or abusive matter concerning any person; or (5) in a public place, uses abusive or obscene language or makes an obscene gesture; or (6) creates a public and hazardous or physically offensive condition by any act which such person is not licensed or privileged to do. For purposes of this section, "public place" means any area that is used or held out for use by the public whether owned or operated by public or private interests.

Conn. Gen. Stat. § 53a-181(a).

"Assault" is defined in the state statute for "Assault in the third degree" requires infliction of some "physical injury." See Conn. Gen. Stat. § 53a-61. "Striking" under section 53a-181(a) has been defined as "the intentional use of force or violence on the person of another." State v. Diorio, 529 A.2d 1320, 1328 (Conn. App. 1987) (definition used in jury instruction). "Threat" under subsection (3) has been held to include both physical and verbal manifestations, or any "serious expression of the defendant's intent to harm," State v. DeLoreto, 827 A.2d 671 (Conn. 2003) (affirming defendant's conviction for breach of the peace under section 53a-181(a)(3) based on his use of obscene gestures and profane statements, as well as non-profane statements accompanied by physically threatening gestures); accord State v. Gaymon, 899 A.2d 715 (Conn. App. Ct. 2006).

As summarized supra, Officer Main testified that he arrested plaintiff after observing plaintiff "screaming and yelling," acting "hostile and belligerent," "badgering," and finally grab[bing]" Moynihan's arm (Main Dep. at 24-25). Were these alleged observations undisputed, Main would at a minimum have had arguable probable cause for the arrest under either section (2) or (3). However, because plaintiff denies having touched Moynihan (Miller Dep. 154:9-10; 208:14-15; 214:7,18-215:3; Miller Aff. ¶ 5) or having yelled at her prior to plaintiff's arrest

13

(Miller Dep. 214:1-6; Miller Aff. ¶ 3), there is a dispute as to the reasonableness of Officer Main's claimed belief that plaintiff was committing or had committed a breach of the peace. Although it is well-settled that the standard for proving a criminal case is significantly higher than the standard for probable cause, see Md. v. Pringle, 540 U.S. 366, 370-71 (2003) (citing Ill. v. Gates, 462 U.S. 213, 235 (1983)), a jury crediting Miller's testimony about her conduct over Main's could reasonably conclude Main lacked probable cause to arrest her. Accordingly, summary judgment will be DENIED, leaving the reasonableness of Officer Main's claimed observations of Miller's actions for determination by a jury.[3]

---

[3] This determination is not based on Judge McMahon's comment in accepting the nolle of the criminal case that "the State would have had a great problem proving this particular case," which plaintiff emphasizes. Judge McMahon also stated that "in no way, shape or form am I faulting the police department." (Tr. of Proceedings, Def. Ex. E at 3-4.) While the Connecticut Supreme Court has not yet ruled on whether a favorable termination is required for a false arrest or imprisonment claim, as it is for a malicious prosecution claim, see Holman v. Cascio, 390 F.Supp.2d 120 (D. Conn. 2005); Colon v. Ludemann, 283 F. Supp. 2d 747, 753-54 (D. Conn. 2003) (citing Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996), which distinguished Roesch v. Otarola, 980 F.2d 850 (2d Cir. 1992)), the majority of courts considering the issue have held that an unqualified nolle prosequi represents a disposition favorable to a criminal defendant. See Holman, 390 F. Supp. 2d at 123; Galazo v. City of Waterbury, 303 F. Supp. 2d 213, 218-19 (D. Conn. 2004); Colon, 283 F. Supp. 2d at 754 n.7; Haynes v. City of New London, No. 99CV2551, 2002 U.S. Dist. LEXIS 10366, *4-6 (D. Conn. May 17, 2002); and Sabir v. Jowett, 214 F. Supp. 2d 226, 241 (D. Conn. 2002) (discussing See v. Gosselin, 48 A.2d 560 (Conn. 1946) ("It is sufficient if he was discharged without a trial under circumstances amounting to an abandonment of the

**IV.   Conclusion**

Accordingly, the municipal defendants' motion for summary judgment [Doc. # 37] is GRANTED as to all claims against the Stonington Police Department, and DENIED as to Counts Six (inter alia 42 U.S.C. § 1983 unlawful arrest), Seven (excessive and unreasonable use of force), Eight (violations of the Connecticut constitution) and Nine (false imprisonment) against Officer Main.

IT IS SO ORDERED.

/s/

_____
JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, this 25th day of September, 2006.**

---

prosecution without request from or by arrangement with him.")). But see Birdsall v. City of Hartford, 249 F. Supp. 2d 163, 171 (D. Conn. 2003) (analogizing from Singleton v. City of N.Y., 632 F.2d 185 (2d Cir. 1980), which dealt with an "adjournment in contemplation of dismissal" under New York law, to conclude that "a nolle, like 'an adjournment in contemplation of dismissal, . . . involves the consent of both the prosecution and the accused and leaves open the question of the accused's guilt'"); Bacchiocchi v. Chapman, No. 02CV1403, 2004 U.S. Dist. LEXIS 1077, *13 (D. Conn. Jan. 26, 2004) ("A 'nolled' prosecution is not a favorable termination of the type required for a malicious prosecution claim.") (citing Birdsall); accord Simpson v. DeNardo, No. 02CV1471, 2004 U.S. Dist. LEXIS 14816, *30-32 (D. Conn. July 29, 2004).